IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WALTER "JACK" KITAGAWA and DOUBLE ZZ INC., | ) ) ) | Civ. No. 06-00168 SOM/BMK |
| Plaintiffs, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION |
| vs. | ) ) | AND TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING |
| WORLD AIRWAYS, INC.; AMERICAN ARBITRATION ASSOCIATION, INC.; and Patricia H. Latham, | ) ) ) ) | PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND TEMPORARY RESTRAINING ORDER |
| Defendants. | ) ) | |

ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING PLAINTIFFS' MOTION
FOR DECLARATORY JUDGMENT AND TEMPORARY RESTRAINING ORDER

I.        INTRODUCTION.

This case arises out of an arbitration in Georgia initiated by Defendant World Airways, Inc. ("World") against TM Travel, Inc., d/b/a Jackie's Tours, and Plaintiffs Walter "Jack" Kitagawa ("Kitagawa") and Double ZZ, Inc., d/b/a Jackie's Vegas Tours ("Jackie's Vegas Tours") (collectively, "Plaintiffs").  The Charter Agreement entered into by World and Jackie's Tours contained a clause setting forth the arbitration agreement. Unlike Jackie's Tours, Plaintiffs did not sign the Charter Agreement.  The arbitrator asked for letter briefs on the issue of whether Plaintiffs were bound by the arbitration agreement. World argued that, under theories of "alter ego" and "estoppel," Plaintiffs were bound to the agreement as nonsignatories; Plaintiffs opposed World's assertions.  After reviewing the

letter briefs, the arbitrator determined that Plaintiffs were bound by the agreement and had to arbitrate World's claims. The arbitration hearing has not yet occurred.

Unsatisfied with the arbitrator's decision as to the arbitrability of claims against them, Plaintiffs brought the present lawsuit, seeking a declaration that they are not bound by the arbitration agreement and need not arbitrate World's claims. In response, World filed a counterclaim, seeking a determination that Plaintiffs are bound by the arbitration agreement as alter egos of Jackie's Tours or are estopped from denying an obligation to arbitrate because they received direct benefits from the Charter Agreement.

Before the court are motions by Plaintiffs and World. Plaintiffs' motion seeks a declaration that they are not bound by the arbitration agreement and, alternatively, a temporary restraining order staying the arbitration until the court determines whether they must arbitrate. Plaintiffs argue that, although the arbitrator has rendered her decision on the issue, it is the court--not the arbitrator--that should decide arbitrability. Plaintiffs seek an independent judicial determination as to whether they, as nonsignatories to the arbitration agreement, are bound by that agreement. Plaintiffs argue that they are entitled to a jury trial on the alter ego and estoppel issues. Plaintiffs ask this court alternatively to stay

the arbitration, contending that it is "unfair to force them to participate in arbitration in a foreign jurisdiction and incur great expense."

World moves for an order compelling arbitration against Plaintiffs and dismissing the Complaint or, alternatively, staying the case until arbitration is completed. World argues that the arbitrator had the authority to determine the issue of arbitrability because Plaintiffs fully briefed and submitted that issue to the arbitrator. World also contends that, if the court proceeds to address the arbitrability issue, the court should defer to the arbitrator and conclude that Plaintiffs are bound to arbitrate under the alter ego and estoppel theories.

Plaintiffs may not seek an independent judicial determination on the issue of arbitrability at this time. Having submitted that issue to the arbitrator, waited for her decision, and sought judicial review only after learning that the ruling is unfavorable, they may not now interrupt the arbitration. The court denies Plaintiffs' motion and grants World's motion compelling arbitration and dismissing the case.

II.     LEGAL STANDARD.

Under the Declaratory Judgment Act, a federal court may declare the rights and obligations of any party under an arbitration agreement. The Declaratory Judgment Act is a procedural statute that provides a federal remedy for litigants

seeking a judicial declaration of rights.  It provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Declaratory relief is appropriate:  "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa., 873 F.2d 229, 231 (9th Cir. 1989) (citing Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (9th Cir. 1984)).  The decision to grant declaratory relief lies within the discretion of the trial court.  United States v. State of Washington, 759 F.2d 1353, 1356 (9th Cir. 1985) (citing Zemel v. Rusk, 381 U.S. 1, 19 (1965)).

III.    BACKGROUND FACTS.

In April 2003, World and Jackie's Tours entered into the Charter Agreement, which stated:  "All disputes arising in connection with the Agreement, if not settled pursuant to Section F(i) above, shall be finally settled under the Rules of the

4

American Arbitration Association by one or more arbitrators appointed in accordance with the said Rules." Ex. 1 (attached to World's Motion) at 10. Pursuant to the Charter Agreement, World was to provide customers of Jackie's Tours charter flights between Hawaii and Las Vegas, and Jackie's Tours was to wire payments into an escrow account for such flights ten days before departure. Ex. 1 (attached to World's Motion) at 1; Ex. 3 (attached to World's Motion) ¶ 7. Jackie's Tours allegedly failed to wire payments for flights provided by World from March 4, 2004, through May 2, 2004. Ex. 3 (attached to World's Motion) ¶ 8.

On April 27, 2004, World filed an earlier lawsuit against Jackie's Tours in this court. Jackie's Tours filed a counterclaim against World. Judge David A. Ezra dismissed the counterclaim, stating the court's expectation that "the parties' claims will be resolved in arbitration." Ex. 8 (attached to World's Motion) at 8.

On September 2, 2005, World initiated arbitration against Jackie's Tours, Kitagawa, and Jackie's Vegas Tours to collect monies allegedly owed to World for unpaid charter flights World provided between March 4, 2004, and May 2, 2004. See Exs. 2-3 (attached to World's Motion). Because neither Kitagawa nor Jackie's Vegas Tours had signed the Charter Agreement, the parties submitted letter briefs to the American Arbitration

Association regarding whether Kitagawa and Jackie's Vegas Tours were bound by the Charter Agreement to arbitrate World's claims. <u>See</u> Ex. 4 (attached to World's Opp.).  Plaintiffs argued that the arbitrator should "decline to consider the issue of whether Mr. Kitagawa and [Jackie's Vegas Tours] are parties to the arbitration agreement" because "[t]hat is relief that is left exclusively to the courts."  Ex. 4 (attached to World's Opp.) at 21.

Plaintiffs argue that the letter brief submitted by their counsel was submitted only on behalf of Jackie's Tours, which was represented by the same counsel.  The letter brief does not so indicate.  The letter brief begins, "I am the attorney for the Defendants in the arbitration demand that you have filed . . . ."  Ex. 4 (attached to World's Motion) at 1.  The letter brief goes on to note that Kitagawa and Jackie's Vegas Tours had not signed any arbitration agreement, but it did not clarify that the letter brief was submitted on behalf of only one party (Jackie's Tours) named in the arbitration demand.

In November 2005, the parties submitted their preferences as to who should be the arbitrator.  World's Opp. at 8.  After the arbitrator was appointed, she held a preliminary hearing, at which the parties scheduled the arbitration hearing for December 2006.  Ex. 7 (attached to World's Opp.) at 1-2.  On March 3, 2006, after the parties submitted additional letter

6

briefs on the issue of arbitrability, the arbitrator determined that Kitagawa and Jackie's Vegas Tours "are subject to jurisdiction in this arbitration." Ex. 5 (attached to World's Opp.) at 1.

On March 23, 2006, Plaintiffs filed the present Complaint.

IV.     ANALYSIS.

Plaintiffs contend that, although the arbitrator has already ruled that they must arbitrate World's claims, it is the court--not the arbitrator--that should make such a determination. Plaintiffs' Motion at 10-16 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)). Plaintiffs argue that this court must independently review the question of arbitrability because there is no "clear and unmistakable" evidence that they agreed to submit the arbitrability issue to the arbitrator. Plaintiffs' Motion at 10-16. Plaintiffs further argue that, "if Defendants wish to raise factual issues pertaining to [the alter ego or estoppel theories], Plaintiffs are entitled to a jury trial to resolve such issues." Plaintiffs' Motion at 19.

World asserts that Plaintiffs waived their right to have the court independently determine arbitrability because their conduct implies that they submitted that issue to the arbitrator and because they sought judicial relief only after learning that the arbitrator's ruling was against their interest.

7

World's Opp. at 13-17.  World posits, "By arguing about whether the Arbitrator had the authority to decide if Plaintiffs were bound to arbitrate before the Arbitrator and submitting briefs on that issue, Plaintiffs agreed to allow the Arbitrator to decide that issue."  World's Opp. at 18.  World alternatively argues that Plaintiffs are bound by the arbitration agreement because they are alter egos of Jackie's Tours and are estopped from denying that they directly benefitted from the Charter Agreement.  World's Opp. at 18-29.  The court denies Plaintiffs' motion, compels arbitration, and dismisses the case.

"A party cannot be compelled to arbitrate if an arbitration clause does not bind the party."  Ralph Andrews Prods., Inc. v. Writers Guild of Am., West, 938 F.2d 128, 130 (9th Cir. 1991).  In the usual case, the court is charged with the duty of deciding the issue of arbitrability.  Poweragent, Inc. v. Elec. Data Sys., 358 F.3d 1187, 1191 (9th Cir. 2004) ("Arbitrability is ordinarily for courts, not arbitrators, to decide unless the parties agree otherwise." (citations omitted)); George Day Constr. Co. v. United Bhd. of Carpenters & Joiners of Am., Local 354, 722 F.2d 1471, 1474 (9th Cir. 1984) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)).  "However, because an arbitrator's jurisdiction is rooted in the agreement of the parties, the parties may agree to submit even

the question of arbitrability to the arbitrator for decision." Id. at 1474-75 (citations omitted).

A district court may independently resolve questions about the jurisdiction of an arbitrator pursuant to the Declaratory Judgment Act. Orion Pictures Corp. v. Writers Guild of Am., 946 F.2d 722 (9th Cir. 1991). "A district court may not do so, however, at the behest of a party which has submitted the question of arbitrability to the arbitrator for decision." Id. "Once a party has 'initially submitted the arbitrability question to the arbitrator, any subsequent judicial review is narrowly circumscribed." Id. (citing George Day Constr. Co., 722 F.2d at 1476).

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakeable' evidence that they did so." Poweragent, Inc., 358 F.3d at 1191 (citing First Options v. Kaplan, 514 U.S. 938, 944 (1995)). As Plaintiffs note, "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." First Options, 514 U.S. at 946. However, "consent to grant the arbitrator such authority may be implied from the conduct of the parties in the arbitration setting." George Day Constr. Co., 722 F.2d at 1475. Moreover, "[a] party may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority

9

of the arbitrator to act." Ralph Andrews Prods., Inc., 938F.2d at 130 (citing id. at 1475).

In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 940 (1995), the Supreme Court granted certiorari to decide "how a district court should review an arbitrator's decision that the parties agreed to arbitrate a dispute." In that case, First Options of Chicago, Inc. ("First Options") sought arbitration against Manuel Kaplan, his wife (collectively, "the Kaplans"), and his wholly owned investment company, MK Investments, Inc. ("MKI"). Id. MKI had signed the arbitration agreement, but the Kaplans had not. Id. at 941. Although the Kaplans conceded that MKI was bound by the agreement, they filed written objections with the arbitration panel, arguing that they were not signatories to the agreement and were therefore not bound to arbitrate. Id. The arbitrators decided that they had the power to rule on the merits of First Options' claims against both MKI and the Kaplans and ruled in favor of First Options with respect to both MKI and the Kaplans. Id. The Kaplans moved in the district court to vacate the arbitration award, while First Options moved for confirmation. Id. The district court confirmed the entire award. The Third Circuit Court affirmed with respect to MKI but reversed with respect to the Kaplans.

On certiorari, the Supreme Court affirmed the Third Circuit, holding that "a court must defer to an arbitrator's

arbitrability decision when the parties submitted that matter to arbitration." Id. at 943. The Court noted, however, that courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakeable evidence that they did so. Id. at 944 (citations omitted). First Options had argued that the Kaplans had submitted the issue to the arbitrators by filing a written memorandum objecting to their jurisdiction, but the Court noted that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." Id. at 946. The Court also noted the "obvious explanation" for the Kaplans' presence before the arbitrators, i.e., "that MKI, Mr. Kaplans' wholly owned firm, was arbitrating [contractual] matters." Id. at 946. Ultimately, the Court concluded that the Kaplans had not submitted the issue to the arbitrators and that, therefore, "the arbitrability of the Kaplan/First Options dispute was subject to independent review by the courts." Id. at 947. What is of particular note to this court is that the court challenge was allowed after the arbitration was completed, through motions to vacate and confirm the arbitration award. First Options did not involve a judicial challenge that allowed the arbitration process to be interrupted, which is what Plaintiffs seek here.

This court finds guidance in George Day Construction Co. v. United Brotherhood of Carpenters & Joiners of America,

11

Local 354, 722 F.2d 1471, 1475 (9th Cir. 1984).  In that case, the Ninth Circuit concluded that the conduct of George Day Construction Company ("George Day") clearly evinced its intent to allow the arbitrator to decide the question of arbitrability. George Day fully addressed the issue of arbitrability before the arbitrator and did not reserve the question of arbitrability for initial determination in a judicial forum.  Id.  The court held, "Under these circumstances, we conclude that [George Day] impliedly consented to the arbitrator's deciding . . . the question of the arbitrability."  Id.  The court concluded that George Day's conduct "clearly demonstrated this purpose."  Id. The court added:

> Had the employer objected to the arbitrator's authority, refused to argue the arbitrability issue before him, and proceeded to the merits of the grievance, then, clearly the arbitrability question would have been preserved for independent judicial scrutiny. The same result could be achieved by making an objection as to jurisdiction and an express reservation of the question on the record.

Id.  The question raised by Plaintiffs' position is whether they demonstrated any intent to leave arbitrability to the arbitrator when, among other things, they allowed the arbitrator to decide the arbitrability issue over their objection without seeking earlier court intervention.

In Ralph Andrews Prods., Inc. v. Writers Guild of Am., West., 938 F.2d 128, 130 (9th Cir. 1991), the Ninth Circuit noted

12

that a party's consent to grant the arbitrator authority to decide an issue "may be implied from the conduct of the parties in the arbitration setting."  In that case, the defendants had initiated arbitration against two corporations of which Ralph Andrews ("Andrews") was the sole officer and shareholder.  Id. at 129.  The arbitration was based on an employment contract and collective bargaining agreement, neither of which Andrews was a party to.  Id. at 129-30.  Andrews objected to being named as a party to the arbitration and "appeared at the arbitration hearing, without an attorney, only in order to address claims against the corporations."  Id. at 130.  Because the court concluded that "Andrews did all that could be expected under the circumstances to assert clearly that the arbitrator had no authority to bind him personally," the court held that "his conduct, taken as a whole, did not constitute voluntary submission of the alter-ego issue to the arbitrator."  Id. (citing George Day Constr. Co., 722 F.2d at  1475).

   In the present case, after World initiated arbitration against Plaintiffs, Plaintiffs submitted letter briefs on their own behalf to the American Arbitration Association regarding the question of arbitrability.  See Ex. 4 (attached to World's Opp.). In their letter briefs, Plaintiffs argued that the arbitrator should "decline to consider the issue of whether Mr. Kitagawa and [Jackie's Vegas Tours] are parties to the arbitration agreement"

13

because "[t]hat is relief that is left exclusively to the courts." Ex. 4 (attached to World's Opp.) at 21. In November 2005, the parties submitted their preferences as to who should be the arbitrator. World's Opp. at 8. After the arbitrator was appointed, she held a preliminary hearing and scheduled the arbitration hearing. Ex. 7 (attached to World's Opp.) at 1-2. At the hearing, the parties "expressed an interest in the Accelerated Exchange Program." Ex. 7 (attached to World's Opp.) at 1. On March 3, 2006, after the parties submitted additional letter briefs on the issue of arbitrability, the arbitrator determined that Plaintiffs "are subject to jurisdiction in this arbitration." Ex. 5 (attached to World's Opp.) at 1. Plaintiffs filed the present Complaint seeking an independent judicial determination of the arbitrability issue on March 23, 2006, after receiving the arbitrator's adverse decision.

   Plaintiffs fully briefed the arbitrability issue before the arbitrator without seeking an initial judicial determination or reserving the question for later judicial determination. See Ex. 4 (attached to World's Opp.). Arguably, Plaintiffs did not do all that they could have done "to assert clearly that the arbitrator had no authority to bind [them]." See Ralph Andrews Prods., Inc., 938 F.2d at 130; see also George Day Constr. Co., 772 F.2d at (noting that the plaintiff could have declined to submit the issue to the arbitrator or reserved the question for

later judicial determination). Rather, Plaintiffs continued to participate in the arbitration proceedings while awaiting the arbitrator's decision.

Only after learning that the arbitrator's decision was against their interest did Plaintiffs file the Complaint seeking an independent judicial determination of the same issue already presented to and determined by the arbitrator. Furthermore, unlike in Ralph Andrews Productions, Inc., 938 F.2d at 130, Plaintiffs arguably appeared before the arbitrator on their own behalf, not merely in support of Jackie's Tours. See id. at 130 (noting that Andrews "appeared at the arbitration hearing, without an attorney, only in order to address claims against the corporations").

While the present motions seek this court's ruling on whether Plaintiffs waived any right to a judicial determination of arbitrability, this court need not and does not decide that issue. This court rules only that, under the circumstances, Plaintiffs are not entitled to interrupt the arbitration to obtain an independent judicial determination as to arbitrability. In First Options of Chicago, Inc., 514 U.S. at 943, the Court noted that, if the parties submitted the dispute to an arbitrator, "the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." 514 U.S. at 943 (citing 9 U.S.C. § 10).

The Court ultimately held that claims against nonsignatories were not arbitrable, but that holding resulted from post-arbitration judicial proceedings, not judicial proceedings that interrupted the arbitration process.  Cf. Ralph Andrews Prods., Inc., 938 F.2d at 130 ("A party may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act." (citing George Day Constr. Co., 722 F.2d at 1475-76)).  Accordingly, the court denies Plaintiffs' request that this court independently determine the arbitrability issue while the arbitration is pending.  This court grants World's motion to compel arbitration and dismisses the case.

Like the nonsignatories in First Options, Plaintiffs may be able to obtain deferential judicial review of the arbitrator's arbitrability determination after the final arbitration award is rendered, provided, of course, the challenge falls within the scope of a proper post-arbitration motion.  See e.g., First Options of Chicago, Inc., 514 U.S. at 940-41; Ralph Andrews Prods., Inc., 938 F.2d at 130; George Day Constr. Co., Inc., 722 F.2d at 1474-1479; 9 U.S.C. §§ 9, 10.  The present ruling is not a decision as to whether Kitagawa or Jackie's Vegas Tours is indeed an alter ego of Jackie's Tours or subject to estoppel based on receipt of benefits.  Nor is this a ruling as to whether Plaintiffs have waived for all time a challenge to

arbitrability.  This court is only ruling that, having proceeded with the arbitrator, Plaintiffs may not seek review in this court in the midst of the arbitration process.

V.      CONCLUSION.

In light of the foregoing, the court grants World's motion to compel arbitration and to dismiss Plaintiffs' Complaint and denies Plaintiffs' motion for declaratory judgment and temporary restraining order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 20, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**Kitagawa, et al. v. World Airways, Inc., et al.**, **Civ. No. 06-168 SOM/BMK; ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND TEMPORARY RESTRAINING ORDER.**